Welles, J.
 

 The law upon which the judgment in the court below was founded, is the 13th section of the act entitled “ an act to suppress intemperance and to regulate the sale of intoxicating liquors,” passed April 16th, 1857. (Laws, vol. 2, 405.) That section is in the following words: “Whoever shall sell any strong or spirituous liquors or wines, in quantities less than five gallons at a time, without having a license therefor, granted as herein provided, shall forfeit fifty dollars for each offénoe.” The only question to be decided is, whether strong beer is embraced in the terms strong or spirituous liquors, as expressed in the section referred to.
 

 In the ■ case of
 
 Nevin
 
 v.
 
 Ladue
 
 (3 Denio, 43), it was held by the Supreme Court that ale and strong beer were includéd in the terms “strong or spirituous liquors” as used in the excise law of the Revised Statutes (1 R. S., 680, § 15), making it penal to sell such liquors in quantities less than five gallons without a license. The section of the Revised Statutes referred to, is identical with section 13 of the act of 1857, above recited, excepting that in the former, the penalty for such sale was $25, and in the latter it is $50.
 

 The case of
 
 Nevin
 
 v.
 
 Ladue
 
 was afterwards taken to the Court of Errors (3 Denio, 437), where the judgment of the Supreme Court was reversed, on the ground that upon the trial before the justice, where the action was originally commenced, the judgment was rendered against Nevin on his confession that he had sold ■ ale, or strong beer, or fermented beer, without a license. He was charged before the justice with having sold ale, strong beer or fermented beer, and he confessed the charge. The Court of Errors held that the term “fermented beer ” might have well been understood by Nevin to mean some one of. the
 
 *175
 
 various kinds of beer which had long been in use in this country, under the different names of spruce beer, ginger beer, molasses beer, &c., none of which could properly be termed “strong beer,” or be included in,the words of the statute, “strong or spirituous liquors;” and all of which had undergone, to some extent, the process of fermentation, and therefore, as the charge confessed was of selling only one of three kinds of liquor, to wit : ale, or strong beer, or fermented beer, the charge and confession might as well relate to the latter as to either of the others, and being thus in the alternative, did not prove the sale of either one in particular. The only opinion reported in the Court of Errors was by Chancellor Walworth, who, after an elaborate examination of the question, holds decidedly that ale andstrongbeer were both included in the words “strong liquors,” and that both were within the prohibition of the statute. But? for the reason stated before, he was in favor of reversing the j udgment. The report of the case states that Senators Barlow, Spencer and Wright delivered written opinions for reversal on the ground that the question whether the sale of ale or strong beer was prohibited by the statute did not arise; it not being shown, as they construed the return of the' justice, that the defendant had sold such liquors. But their opinions are not reported. It does not appear that any member of the court expressed any dissent from the views of the Chancellor. The case, especially as decided by the Supreme Court, is an authority directly in point in support of the judgment of the court below in the case under consideration.
 

 In the case of
 
 The People
 
 v.
 
 Wheelock
 
 (3 Parker Cr. R., 9), it was held that the word “beer,” in its ordinary sense, denoted a beverage which is intoxicating, and was within the meaning of the words “ strong and spirituous liquors ” as used in the Revised Statutes. That case was decided at a general term of the Supreme Court in the seventh district, in March, 1855. There may seem' to be, at first view, a discrepancy between the case last referred to and that of
 
 Nevin
 
 v. Ladue, inasmuch as the latter holds that the sale of “ fermented beer ” is not prohibited, and in the former" “ beer ” is held to be within the prohibition
 
 *176
 
 of the statute. ' But this apparent discrepancy disappears when it is borne in mind that in
 
 Nevin
 
 v.
 
 Ladue
 
 the expression “ fermented beer ” is used in addition or in contradistinction to “ strong beer,” showing clearly that fermented beer is there intended as something different from strong beer, or as beer which is not strong. In
 
 The Board of Commissioners, &c., of Cayuga
 
 County, v.
 
 Freeoff
 
 (17 How. Pr. R., 442), it was held at special term that “ale and strong beer” were included in the prohibition of the 13th section of the- excise law of 1857. That case was decided in January, 1858. In the case of
 
 The People
 
 v.
 
 Crilley
 
 decided at a general term of the Supreme Court in the second district, in July, 1855 (20 Barb. S. C. R., 246), it was held that the sale of ale in quantities less than five gallons without a license was not prohibited by the excise law of the Revised Statutes.
 

 The foregoing are all the reported cases decided in this State that I have met with, bearing upon the question' under consideration. But I understand that in' several of the districts, and particularly in the sixth, the Supreme Court have uniformly held, both at general and special terms, that the sale of ale and strong beer are within the prohibitions of both the excise law of the Revised Statutes and that of 1857; and I am not aware that the case of
 
 The People
 
 v.
 
 Crilley, supra,
 
 has ever been followed out of the second district.
 

 But, independent of any adjudications of the question, it seems to me entirely apparent that the legislature had in view,both in the excise law of the Revised Statutes and in the statute of 1857 referred to, and particularly in the latter, the regulation of the sale of all and every kind of intoxicating liquors, and intended to prohibit their sale in quantities less than. five gallons without the license provided for. Among the various descriptions of liquors mentioned in the statute of 1857, the sale of which it undertakes to regulate, none are specified by name, excepting wine, and that only by the general term, “wine” or “wines,” without describing in any way the kind of wine, in other respects, descriptive words axe employed to show the kind.or character of liquors, the sale of which, with
 
 *177
 
 out license, is denounced. First, in the title of the act: It is to suppress intemperance, and to regulate the sale of intoxicating liquors. Sections 2 and 6 use the expression “ strong and spirituous liquors and wines," section 5 uses the words “strong or spirituous liquors,” section 10, “ any sort of strong or spirituous liquors or wines,” sections 11, 20, 25 and 27, “ strong or spirituous liquors or wines,” sections 12, 13, 14,15, 18 and 28, “any strong or spirituous liquors or wines,” section 12, “any spirituous liquors or wines," section 15, “ a!hy strong or spirituous liquor,” section 19, “intoxicating liquors,” section 29, “imported or other intoxicating liquor,” also, “intoxicating liquors or wines,” section 31, “ intoxicating drinks.”
 

 The ravages upon the physical, intellectual and spiritual condition of our race by the habitual use of intoxicating beverages, together with the labors for the last forty years of benevolent and philanthropic individuals to arrest the scourge by efforts to produce a revolution in the sentiments, practices and habits of the community in respect thereto, and the several legislative enactments with the same end in view, which have been the results of those labors and efforts, are all, as I think, matters of judicial cognizance, and are proper to be borne in mind and referred to in our examinations to ascertain the meaning and true interpretation of the statute now in force on the subject.
 

 In view of these considerations, it is quite apparent that the great and paramount object and design-of the legislature, in the present statute, was to restrain, not by absolute and indiscriminate prohibition, but by a process of regulation, the habitual and intemperate use of any intoxicating beverage. ín the language of the title of the act, it was to prevent intemperance. In looking through the act, we see that this was to be accomplished principally by regulating the sale of certain liquors in small quantities, and by particular and limited prohibitions of such sales. The liquors, the traffic in which was to be thus-regulated, were such as were known to be capable, when drank, of producing, and which generally resulted in, partial or total intoxication. Speculations have from time to time been
 
 *178
 
 indulged in, founded upon the percentage of alcohol which different kinds of beverages contain, as ascertained by chemical analyses; and attempts have been made to show that the character or strength of the liquors, the sale and use of which the statute was intended to regulate and repress, is to be governed by such percentage. But it seems to me that but one safe and sensible line of distinction can be drawn between the different kinds of liquor containing alcohol, in order to determine upon which of them the statute was intended to operate -; and that is, between those which are capable of causing intoxication, and those containing so small a percentage of alcohol that the human stomach cannot contain sufficient of the liquor to pro-dace that effect; as is said to be the case with respect to spruce beer, ginger beer, lager beer and some others. It must be strong liquor; that is, strong enough with the inebriating principle or element, whether obtained by distillation or fermentation, to produce intoxication. If that be its character, the unlicensed vender at retail, or in the quantities mentioned in the 13th section, incurs the penalty of the statute.
 

 How that ale, strong beer, porter and most of the fermented drinks known in this country, and which are sold at public houses and groceries by the drink, can and do produce intoxi- ■ cation to a greater or less extent, and that such is the ordinary effect of their use as a beverage, no man of mature years, who is not strangely oblivious to surrounding and passing events, can have failed to observe. The fact is so patent that -it is impossible to close our eyes against it. There is, in my opinion, one aspect in which the unrestrained sale of such liquors by the drink is far*more injurious than that of distilled liquors. I allude to the temptation it presents to the reformed or reforming inebriate, who will much more readily yield to a drought of the former than of the latter, and thus fall a hopeless victim to the appetite which he had well nigh conquered.
 

 Upon the whole, it seems to me but little short of absurd to contend that the excise law now in force should receive the construction contended for by the appellant, which would leave
 
 *179
 
 at least one-half of the evil intended to be remedied entirely untouched and unprovided against.
 

 For the foregoing reasons X am in favor- of affirming the judgment of the Supreme Court.
 

 Comstock, Ch. J., and Demo, J., dissented.
 

 Judgment affirmed.