Daniels, J.
It was the duty of the jury empanneled to try the defendant, to find a verdict upon the evidence given in the course of the trial, and upon that alone. Of course its weight and credit should be judged of by them in the light of their own experience, but that should be done without any addition to it or modification of it, arising out of the peculiar scientific acquirements or actual knowledge of the facts in controversy, by any one or more of their number. The law is imperative in requiring oral evidence, given upon the trial of civil and criminal cases, to be detailed under the solemnity of an oath, properly administered to the witness, and without any distinction in the character of the information to be conveyed, whether it consists in the deductions of science or the knowledge of facts. The universal prevalence and application of this rule excludes jurors from communicating to others for the purpose of influencing their conclusions, the knowledge of any facts and the existence of any .scientific opinions bearing upon the questions submitted to their decision. If a juror has acquired knowledge con- *349 corning the circumstances of the case, or has formed, scientific conclusions bearing upon the controversy pending before the jury, and important for the other jurors upon the panel to know, it is his duty to be sworn and examined the same as any other witness in the case, and under the responsibilities of his oath to state the facts known to him, or the opinions formed by him, in the presence of the parties. This is required by two prominent considerations: 1st. That the evidence shall be given under the sanction of an oath. 2d. That the parties may have an opportunity of knowing on what evidence the jury are to act; and a juror who should, after the jury have retired to their deliberations, avail himself of the opportunity of adding to or detracting from the evidence by means of his own peculiar knowledge of any of the circumstances attending the transaction submitted to their consideration, would not only violate his duties, but he would also be utterly unfitted for the position he was called upon to occupy. It is not probable that the learned judge who presided at the trial of the defendant inténded to give the jury any such liberty as this, though it may very well be, from the general language used in the charge, they may have so understood and acted upon it. The instruction was that they were to use their own knowledge and science, if they possessed any, applicable to the case, to determine the question. That obviously was whether lager beer was an intoxicating liquor, for that was the only question to be settled by the verdict. This was clearly error, and as it may have improperly influenced the conclusion of the jury, a new trial should be granted.
But, as the question will necessarily arise upon another trial of the defendant, whether, under the evidence, a criminal offence is proved, it will not be improper to examine that at this time. That is the most important question involved in this case, and it is not without interest to a very considerable portion of the community. *350 The inroads which the use of intoxicating liquors has always made upon the public health and morals, and their prominent agency in the production and commission of crime, have rendered the traffic in them a very proper subject for legislative consideration. These consequences are usually found to follow from the sale of liquors in public places, and in small quantities, where they are readily accessible, and tempt the habits or appetites of those inclined to indulge in their use. On this account it has been the legislative policy of this, as well as other States, as it was of the colonies before them, to impose restrictions upon the public sale of liquors in small quantities, including all under five gallons, and to commit such sales to persons of known integrity and responsibility. How far the latter duty is observed by the bodies to which the execution of the law is in part confided, it is not necessary at this time to inquire, for the point now presented for consideration affects not the policy but the true construction of the law.
The statute prohibits the sale of strong or spirituous liquors or wines in quantities less than five gallons at a time, unless the seller has a license therefor. (2 R. S., 5th ed., 942, § 14.) And it' describes the prohibited subjects in various phrases, each apparently in the intention of the Legislature being of the same signification. In other sections of the act they are designated by the terms “strong or spirituous liquors,” “intoxicating liquors,” “ intoxicating liquors or wines,” and “ intoxicating "drinks.” A very complete analysis of the statute in this respect will be found in the opinion of Justice Welles, in the case of The Board of Coms. of Tompkins Co. v. Taylor (21 N. Y., 176-7). This statute is more comprehensive in its prohibitions than the one found in the Revised Statutes of 1830, and-which for many years continued without material alteration to be the law of this State; for by the terms of that statute the sale of metheglin, currant *351 wine, cherry wine and cider was in no manner interfered with or prohibited. (1 R. S., 681, § 29.) This was an important exception, indicating it to have been the conviction of the Legislature that the articles excepted might otherwise be included within the description of “strong or spirituous liquors or wines,” which were the terms then used as descriptive of the subjects the statute was intended to operate upon. That exception was not incorporated into the present law; and the omission to retain it clearly indicates the legislative intention to have been to make the present law more general than the previous statute in its restrictions upon the sales of intoxicating liquors. All liquors are now comprehended within its term, whether distilled or fermented, which properly fall within the legal signification of the words “ intoxicating liquors,” or “intoxicating drinks.” And the extent of that legal signification, unaffected by exceptions or restrictions, is the inquiry now presented for consideration. In the proper prosecution of it the words are to receive their ordinary popular meaning. Except that so far as their import may be doubtful or uncertain, the doubt or uncerainty should be solved favorably to the defendant; for the legal and settled rule of construction applied to penal and criminal statutes is, that they shall be construed strictly, and not extended beyond their plain and obvious meaning, so far as they declare what acts shall constitute an offense. (U. S. v. Morris, 14 Peters, 464; Schooner Nymph, 1 Sumner, 516, 518; Watervliet Turnpike Co. v. McKean, 6 Hill, 620.) The presence of alcohol in so slight a quantity as not to unduly excite the human system will not constitute an intoxicating liquor. Accordingly, the sale of fermented beer, without any more particular description of the article or of its effects, has been held not to be prohibited under the general prohibition of the sale of “strong or spirituous liquors or wines.” (Nevin v. Ladue, 3 Denio, 473.) And for the same reason the vari *352 ous kinds of domestic beer, known as spring beer, ginger beer, molasses beer, &c., have been held not to be included within the term used in the statute. (3 Denio, 450-1; Comrs. of Excise v. Taylor, 21 N. Y., 173.) The reasons given for excluding them from the comprehension of these terms are that “they were never considered as strong liquors or intoxicating beverages,” either because it was supposed the human stomach had not the capacity to contain a sufficient quantity of those kinds of beer, if they were properly made, to unduly or .injuriously excite the. person who used them as a beverage, or for the reason that those who were in the habit of using them never got intoxicated by such use.” (Per Walworth, Chancellor, in Nevin v. Ladue, supra.) As to the different descriptions of beer, therefore, which are not known to be capable of producing intoxication, considering the capacity of the human stomach, there is no difficulty in the way of declaring them to be excluded from the operation of the statute.
But as to lager beer, which from the evidence given in this case seems to be capable of producing occasional intoxication, the application of the statute is attended with more difficulty. The circumstance of intoxication following its use in very rare exceptional cases would be insufficient to characterize it as an inebriating drink; for if the question, whether the sale without license violated the statute, was made to depend upon that, then it would follow that what should be legally declared a criminal offense in one part of the State, would be an innocent act in others, depending entirely upon the local habitation of the person or persons capable of being thus affected. Under such a construction of the law, persons charged with its violation could only be. convicted when proof of actual intoxication of some one person had been produced by imbibing the liquor in question; and if no such person could be found when the prosecution was carried on, an acquittal would necessarily take place. While in other *353 localities, where intoxication could be shown even in one instance to have followed the use of lager bier, all persons selling it without license in the quantities mentioned in the statute, would as surely be convicted. The Legislature could not have intended to declare an act to be a criminal offense where the effect of it was a matter of so much uncertainty, and where the criminality was made to depend, as it is in this case, solely on the effect produced by it. On the contrary, the general intent affecting this, as well as all other laws made to define and prohibit criminal offenses, is that the offense shall be so clearly described that the public will encounter no serious difficulty in discovering its distinguishing attributes. It should not require a minute and carefully-balanced scientific investigation to determine whether a given combination of circumstances does or does not constitute a crime; but the thing intended to be prohibited should be so definitely ascertained as to be within the comprehension of all persons possessing ordinary intelligence. And it is not to be supposed that the Legislature intended to act upon any different principle in this instance.
In this view of the statute, lager beer falls within the terms “intoxicating liquors,” if the use of it is ordinarily or commonly attended with entire or partial intoxication; if the use is not ordinarily or commonly attended with this effect, the sale of it without license is not embraced within the prohibition of the statute. It is not necessary, in order to constitute an offense under this statute, that persons ordinarily or commonly using the article should become intoxicated by means of the effects produced by it; for that is not the effect of using many other liquors conceded and assumed to be intoxicating. Whether intoxicating or not must depend very much upon the quantity used, and the sensibility of the stomach of the person using it. It is sufficient to constitute an offense under this statute that an ordinary effect found to follow the use *354 of lager beer is entire or partial intoxication. If it frequently or ordinarily is attended with that result, then all the consequences are produced by it which render it a proper subject for legislative regulation. That will be sufficient to bring its sale in quantities less than five gallons without license within the rule already applied to the construction of this statute. (3 Denio, 451.) This rule, as it is stated in the opinion of Justice Welles, which was concurred in by a majority of the Court of Appeals, requires that the liquors, the traffic in which is regulated by the statute, shall be such as are “ known to be capable, when drank, of producing, and which generally” result “in partial or total intoxication.” He adds: “ It seems to me that but one safe and sensible line of distinction can be drawn between the different kinds of liquor containing alcohol, in order to determine upon which of them the statute was intended to operate, and that is between those which are capable of causing intoxication, and those containing so small a percentage of alcohol that the human stomach cannot contain sufficient of the liquor to produce that effect.” (Comrs. of Excise v. Taylor, 21 N. Y., 177-8.)
Whether, within the operation of the rule here maintained, the article in question is an intoxicating liquor, must depend upon the evidence given upon the trial. (The Peaple v. Hart, 24 How. P. R., 289.) And where that is ' conflicting, the conflict must be determined, as all questions of that nature are under our system of jurisprudence, by the jury. The conviction should be reversed and a new trial granted.
Marvin, J., concurred; Grover, P. J., dissented.
Conviction reversed and new trial granted.
Note.—Upon a subsequent trial of the defendant before the Court of Sessions, under the rule adopted in this opinion, the defendant was convicted; and that conviction was affirmed at the February General Term in 1868, by Daniels, Marvin and Davis, Justices.