Caroline C. Blatz, Respondent, *v.* Jacob Rohrbach, Appellant.

In an action to recover damages under the civil damage act (Chap. 646, Laws of 1873), the evidence showed that B., plaintiff's husband, committed suicide while intoxicated; that he spent the evening preceding his death in defendant's saloon, and while there drank two or three glasses of beer. There was no evidence as to the character or quality of the beer. The court charged the jury that B., while in defendant's saloon drank intoxicating liquors. *Held* (Follett, Ch. J., Bradley, and Potter, JJ., dissenting), error; and that to justify a recovery plaintiff was bound to show that the beer drank was of an intoxicating character.

The term "beer," in the absence of evidence as to its quality and effect, does not necessarily import an intoxicating beverage, as it includes both intoxicating and non-intoxicating liquors.

*People* v. *Wheelock* (3 Park. Cr. R. 9) overruled.

*Nevin* v. *Ladue* (3 Den. 43); *Comrs.* v. *Taylor* (21 N. Y. 173); *Killip* v. *McKay* (13 N. Y. S. R. 5) distinguished.

*It seems* the courts will take notice that many of the beverages sold under the name of beer are not intoxicating, while the stronger kinds, such as ale, porter and strong beer are of an intoxicating character.

The rule that the court may not indulge in any presumption except as to the innocence of the accused, applies not only to prosecutions distinctly criminal, but to penal actions.

Reported below, 42 Hun, 402.

(Argued October 14, 1889; decided November 26, 1889.)

Appeal from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 13, 1886, which affirmed a judgment in favor of the plaintiff, entered upon a verdict.

This action was brought by plaintiff under chapter 646 of the Laws of 1873, known as the Civil Damage Act, to recover damages for the death of her husband, which she claimed was caused by defendant selling him intoxicating liquors.

The material facts are sufficiently stated in the opinion.

*L. L. Van Allen* for appellant. The plaintiff cannot recover unless she has proven that the defendant either gave or sold to her husband intoxicating liquors. (Laws of 1873, chap. 646.) Under this act the proof, to entitle plaintiff to

recover, must be clear and not speculative. (*Lovelaw* v. *Briggs*, 32 Hun, 477; *Marsh* v. *Mabbitt*, 3 Week. Dig. 126.)

*Charles H. Noxon* for respondent.

BROWN, J. The plaintiff is the widow of William T. Blatz, who committed suicide by hanging while in a condition of intoxication. The action is brought under the statute known as the "Civil Damage Act," and the plaintiff had a verdict at the circuit which was affirmed at the General Term.

The undisputed proof on the trial showed that Blatz spent the evening preceding his death in the defendant's saloon, and that while there he drank two or three glasses of beer. The court charged the jury that he drank intoxicating liquors that evening at defendant's saloon. The exception taken to this part of the charge raises the only question that it is necessary to discuss on this appeal, and we are called upon to decide whether the term "beer," in the absence of all evidence as to its quality and effect, imports an intoxicating beverage. "Beer" as it is ordinarily understood and as it is defined in the dictionary, is a "fermented liquor." It is made from malted grain with hops or from the extract of roots and other parts of various plants, as spruce, ginger, sassafras, etc. It is known under various names and designated as ale, porter, stout, strong beer, small beer, lager, spruce beer, etc. The courts take notice that many of the beverages sold under the name of beer are not intoxicating, while the stronger kinds as ale, porter and strong beer are of an intoxicating character. (*Nevin* v. *Ladue*, 3 Den. 437–450; *Rau* v. *People*, 63 N. Y. 277.) It would seem, therefore, that a " term," which included both intoxicating and non-intoxicating liquors, could not be said in its ordinary meaning necessarily to imply an intoxicating drink, unless such import has been given to it either by statute or by the decision of the courts. The word was first introduced into our present excise law in 1873 (Chap. 549), which prohibited the sale without license in quantities less than five gallons of strong and spirituous liquors, wines, ale and beer. The expressed purpose of the statute was to regulate the sale of

intoxicating liquors. Since the enactment of that law this court decided in *People* v. *Rau* (*supra*), that lager beer could not be held to be an intoxicating liquor without proof of that fact. It was there said : "As to such well known beverages as whisky, brandy, gin, ale and strong beer, the courts, without proof, acting upon their own knowledge derived from observation, will take notice that they are intoxicating, and will, therefore, require no proof of the fact. But there are, doubtless, intoxicating beverages which are not so well known, and of whose character the courts could not take notice, and more intoxicating beverages may yet be discovered. As to all such, when one is charged with selling them in violation of law, there must be proof that they are intoxicating before a conviction can be had. Hitherto the courts have not been willing to take notice that lager beer is intoxicating, but have submitted the question, when controverted, to the jury, to be determined upon the evidence." The use of the word in the statute is in entire harmony with the views expressed in the case cited. The legislature recognized the fact, the existence of which courts take judicial notice, that fermented liquor may or may not be intoxicating. Some of it is and some of it is not. The sale of the former was forbidden, not so as to the latter. Evidence could always be given on a prosecution for violation of the law as to the character and effect of the particular drinks sold under the name of beer, and thus the law would be executed. It plainly was not the intention of the legislature to prohibit the sale of the numerous kinds of mild drink sold under the name of beer, and I think it may be affirmed that the term, as now used, if it imports any particular beverage, is generally understood to refer to "lager." This construction gives full effect to the law, and, under this expansive meaning of the word, the sale of all fermented liquors which are shown to be intoxicating will be regulated. To adopt the contrary view will violate the cardinal rule which is applied in all criminal prosecutions, viz. : That the prosecution must prove every fact essential to establish the guilt of the person charged with a crime. The fact of the sale of intoxicating

liquor must be established.   As to strong and spirituous liquors the courts take notice of their intoxicating character, and that stands in lieu of evidence.   But, as to the milder kinds of drink, evidence of their intoxicating character must be produced.   If, therefore, on the trial, upon proof of the sale of beer without any evidence as to its character or quality, the jury is to be instructed that it is of the kind that intoxicates, the court assumes a fact not proven, and the burden of showing that it is of a non-intoxicating character is put on the defendant. As well might a person be convicted of grand larceny by proof of the theft of a watch, or of burglary in the first degree by proof of the breaking into an inhabited dwelling.   But, as in the first-named offense, the value of the watch is an essential ingredient of the crime, and, in the second, it is necessary to prove that the offense was committed in the night-time, so, with the sale of "beer," it must be shown that it was of an intoxicating character, otherwise there has been no violation of the law.   The court can indulge in no presumption in the case except as to the innocence of the accused, and until it appears by sufficiency of proof that the particular beverage sold was of an intoxicating kind the presumption of innocence controls the case.   This rule applies not only to prosecutions distinctly criminal, but to penal actions where the plaintiff seeks to charge the adverse party with a penalty or forfeiture, and is particularly applicable in an action like the present where the consequences may be as disastrous to a defendant as they appear to have been in this case.   It is said, however, that by the decision of the courts it has been decided that the word imports an intoxicating beverage.   The only case that so holds that I have been able to find is *People* v. *Wheelock* (3 Park. Cr. Rep. 9), which was a decision of the General Term of the seventh district in 1855.   The decision is based upon *Nevin* v. *Ladue* (3 Denio, 43), and same case in error, page 437, and on the definition of the word in Webster's Dictionary.   In *Nevin* v. *Ladue*, the defendant was charged with selling "ale, strong beer or fermented beer," and admitted the sale, but claimed .

that it was not prohibited by statute. The Supreme Court affirmed the conviction on the authority of the definition of the word "beer" in Webster's Dictionary, which was said in the opinion to be "a spirituous liquor made from grain," etc. It may be that the early edition of Webster's Dictionary so defined the word, but the later editions do not describe beer as a spirituous liquor, but as a "fermented liquor." Worcester's Dictionary gives the same definition to the word. This decision was reversed by the court of errors on the ground that the admission of a charge made in the alternative imputed nothing more than that the defendant sold "fermented beer," and that that term, in the connection in which it was used, covered various kinds of beer which had long been in use in this country under the different names of spruce beer, ginger beer, etc., which had never been considered as intoxicating either here or in England. There is nothing in the report of the case to show that the court concurred in the views of the chancellor on the meaning of the word beer. Three other opinions were delivered, in all of which it was maintained that the question whether ale or strong beer was within the prohibition of the excise laws did not arise in the case; and the case is an authority for nothing more than that an admission of selling "fermented beer" was not a violation of the statute against selling strong and spirituous liquors. Any attempt to distinguish between "beer" and "fermented beer" would, I think, be a failure. Beer is a fermented liquor, and unless the particular beverage under consideration is a fermented liquor, it is not beer. Strong beer, small beer and ale were always here and in England recognized as intoxicating drinks, as is shown by the very interesting opinion of the chancellor in the case cited, but the terms "fermented beer" or "beer" include them all, and many more besides, that are not intoxicating. The decision in *People* v. *Whelock* is not, therefore, sustained by the authority cited to support it. In *Commissioners* v. *Taylor* (21 N. Y. 173), the defendant was charged with selling "strong beer" and this court held it within the meaning of

the term " strong and spirituous liquors." *People* v. *Wheelock* was cited and referred to in the opinion, but I do not understand that it received the approval of the court. Indeed, the opinion recognizes the rule laid down in *People* v. *Rau* (*supra*), that a distinction must be made between such liquors as are " capable of causing intoxication and those containing so small a percentage of alcohol that the stomach cannot contain sufficient of the liquor to cause that effect," and cited spruce beer, lager beer and others among the latter kind. *Kilip* v. *McKay* (13 N. Y. S. R. 5) was an action for penalties under section 13, chapter 628, Laws of 1857. The General Term of the fifth department held that the evidence in that case was susceptible of the construction that the " beer " that the witness drank had the taste and quality of ale or strong beer, and although it might have been sold under the name of " lager beer " possessed properties which were intoxicating and upheld the verdict of the jury. It thus appears that in none of the cases, except *People* v. *Whelock*, have the courts attempted to give to the word beer a meaning importing an intoxicating liquor, but in all the fact has been recognized that some kinds of beer are intoxicating and some are not. While it is not necessary to say that the word would include, in its ordinary meaning, such mild drinks as spruce beer or ginger beer, it certainly would include " lager beer " which is one of the best known and, probably, the most extensively used of the malted liquors. But, as has been shown, lager beer is not to be deemed intoxicating without proof of the fact. I do not see, therefore, how, on proof of a sale of beer, the jury could say that it was strong beer or intoxicating beer. It might have been lager beer, and, if it was, they were not authorized on the proof to find for the plaintiff. The proper rule is to require in all prosecutions for violation of the statute for selling beer, evidence of the character and quality of the particular beverages sold. Full effect is thus given to the intention of the legislature to regulate the sale of those liquors which are intoxicating, and the rules that must apply to all prosecutions of a criminal character are maintained. In this case the jury might very

well have found, from the plaintiff's evidence, that the particular beer drank by the plaintiff's husband was intoxicating, but that question was withdrawn entirely from their consideration and they were not permitted to exercise their judgment upon it.

For this error the judgment should be reversed and a new trial granted, with costs, to abide the event.

BRADLEY, J. (dissenting). The complaint alleges a cause of action within the statute, which provides that a wife injured in her means of support, in consequence of the intoxication of any person, shall have a right of action against any person who, by selling or giving away intoxicating liquors, shall have caused the intoxication in whole or in part of such person. (Laws of 1873, chap. 646.) On the evening of March 3, 1885, the husband of the plaintiff, after having been at the saloon of the defendant, went to his place of residence, and there at some time during the night committed suicide by hanging himself. The plaintiff charges that such act of self-destruction of the husband was caused by his intoxication produced by intoxicating liquors obtained by him at the defendant's saloon, and that in consequence of such intoxication, the plaintiff was injured in her means of support. If those propositions were supported by the evidence, the conclusion that the plaintiff was entitled to recover was warranted. (*Volans* v. *Owen*, 74 N. Y. 526; *Mead* v. *Stratton*, 87 id. 493; *Neu* v. *McKechnie*, 95 id. 632.) The plaintiff gave evidence tending to prove that, during his life, she was dependent upon him for support, the means for which he provided by his services, and that her customary means of support were cut off by his death. The propositions whether he was intoxicated, and whether his death was caused by or was the consequence of his intoxication were questions of fact upon the evidence for the jury to determine. The plaintiff and her daughter testified that he came home intoxicated that evening twenty minutes before eleven o'clock; that at a quarter past twelve the plaintiff went to bed, leaving him lying on the lounge, and that the next morning he was

found hanging by the neck dead. Those questions were submitted to the jury, and their finding upon both facts must, for the purposes of this review, be deemed conclusive. He was a man forty-three years of age and, for aught that appears, was in good health, although somewhat intemperate in his habits. He had a family consisting of his wife and several children. The jury were at liberty upon the evidence to conclude that there was no motive on his part to take his life, except that arising from a reckless condition resulting from his intoxication of that night, and that it was the proximate cause of the act which produced his death. The facts that he had attempted a year before to commit suicide in the same manner, and that he at times was despondent and had threatened to take his own life, were properly matters for consideration upon the question of the cause or motive of his act of self-destruction, but they cannot, as matter of law, be said to have been controlling. These facts were for the jury to determine, and their conclusion was permitted by the evidence. It is, however, contended by the defendant's counsel that the evidence failed to prove that the husband obtained any intoxicating liquor at the defendant's saloon that evening, or that he was intoxicated when he left there, and, therefore, the trial court erred in charging the jury that the plaintiff's husband drank intoxicating liquors that evening at the defendant's saloon, to which charge exception was taken.

This instruction by the court to the jury was founded upon the undisputed evidence that the husband drank two or three glasses of beer there at that time. The question raised by that exception is whether, without other evidence as to its quality or effect, it may be assumed that the term "beer," as a beverage, imports intoxicating liquor. It is well understood that all spirituous liquors are intoxicating, and that all intoxicating liquors are not spirituous. As commonly used, the term "spirituous liquors" does not embrace fermented liquors. The latter may or may not be strong and intoxicating. Some of it is and some of it is not so. (*Nevin* v. *Ladue*, 3 Denio, 437.)

The question whether the words "intoxicating liquors" embraced lager beer arose in *Rau* v. *People* (63 N. Y. 277). It was there remarked that the courts had not then been willing to take notice that lager beer was intoxicating, and, therefore, proof of the fact was essential to justify a conviction for a sale of it in violation of the statute. In the Revised Statutes the liquors which it was penal to sell at retail without license, were designated as strong or spirituous. And in *People* v. *Wheelock* (3 Park. Cr. Rep. 9) it was held that the word "beer," in its ordinary sense, denoted a beverage which was intoxicating, and came within the meaning of the words "strong or spirituous liquors" as used in the statute. That case was cited with apparent approval in *Commissioners of Excise* v. *Taylor* (21 N. Y. 173, 175), in which *Nevin* v. *Ladue* was cited and explained. And such was the view of the court in *People* v. *Hart* (24 How. 289). There has also been some legislative import given to the word "beer" in its use to designate a liquor used as a beverage. In the "Act to suppress intemperance, and to regulate the sale of intoxicating liquors" (Laws of 1857, chap. 628, § 5), as amended by Laws of 1873 (chap. 549, § 3), the inhibited sale was applied to strong or spirituous liquors, wines, ale or *beer*. The evident purpose of the statute was to regulate the sale of *intoxicating* liquors, and those there expressly mentioned must be deemed within the intended legislative denunciation as such liquors. They are treated by the statute as intoxicating liquors, and, therefore, within its purpose to place the regulated restriction upon their sale and disposition for use as a beverage. And it may be presumed that such legislative action and intent were founded upon the requisite information. (*Rumsey* v. *People*, 19 N. Y. 41, 47.) It is a fact, of which notice may be taken, that there are fermented liquors and malt liquors which will produce intoxication. And, in view of the statute and cases already referred to, the conclusion is fairly required that the word "beer," unqualifiedly applied to liquor sold or given away to be used as a beverage, presumptively imports intoxicating liquor. It was so held in *Briffitt* v. *State* (58 Wis. 39;

46 Am. Rep. 621). The exception to the charge of the court was, therefore, not well taken. The jury having found that the husband was intoxicated, they were permitted also to find that the intoxication was produced in whole or in part by the beer drank at the defendant's place, although they would have been justified, upon the evidence on the part of the defendant, to have concluded otherwise. It was wholly a question of fact for the jury. It did not appear that the husband obtained any liquor elsewhere that night, and the conclusion was warranted that he reached home about ten minutes after he left the defendant's saloon. The question whether or not the damages were excessive was disposed of in the court below.

There seems to us to be no further question presented by any exception for consideration on this review.

The judgment should be affirmed.

VANN, HAIGHT and PARKER, JJ., concur with BROWN, J.; FOLLETT, Ch. J., and POTTER, J., concur with BRADLEY, J.

Judgment reversed.