# WHEELING.

## STATE *v.* OLIVER.

Submitted June 22, 1885.—Decided July 9, 1885.

1. The sale of cider or crab-cider without a State license therefor is not prohibited by the first section of ch. 107 of the Acts of the Legislature of 1877.

2. According to the true intent and meaning of said statute, neither cider nor crab-cider is included in the terms "spirituous liquors, wine, ale, porter, beer, or any drink of like nature."

The facts of the case are stated in the opinion of the Court:

*McCorkle & McCorkle* and *Watts & Camden* for plaintiff in error.

*Alfred Caldwell*, Attorney-General, for the State.

The question in this case is : Does ch. 32, sec. 1 of the Code as amended by ch. 107 of Acts 1877 prohibiting the sale without a State license of "spirituous liquors, wine, porter, ale or beer, or any drink of a like nature," prohibit the sale of intoxicating crab-cider without such a license ?

The statute is not only a revenue measure, but also a law to provide as far as possible against the evil of intemperance. (Code, ch. 32, as amended by ch. 107 Acts of 1877.) The intent of sec. 1 was to require a license for the sale of *all intoxicating liquors*; and this intent is as clearly expressed as if the statute had used the words "intoxicating liquor" in lieu of the words

"spirituous liquor, wine, porter, ale or beer, or any drink of a like nature."

It is contended by the State that cider of any kind, which is *intoxicating* is a drink of "a like nature" with "wine," and that its sale is prohibited unless under license. Wine and cider are both the juices expressed from fruit. (Web. Dict.) In both cases this juice when fermented will produce intoxication. Had the word "wine" and the words "or any drink of a like nature" been omitted from the statute, the courts could well have held that the selling without a license of intoxicating cider was prohibited by the use of the words "spirituous liquors." The sale of such cider without a license is certainly then prohibited by a statute which in addition to the words "spirituous liquors" uses also the words "wine or any drink of a like nature." Intoxicating cider is a "drink of a like nature with the wine meant in the statute. (*Raw* v. *People*, 63 N. Y. 277 ; *State* v. *Haymond*, 20 W. Va. 22 ; *Godfriedson* v. *People*, 88 Ill. 284 ; *State* v. *Starr*, 67 Me. 242 ; *Commissioners* v. *Taylor*, 21 N. Y. 173 ; *Commonwealth* v. *Blos*, 116 Mass. 56.)

The indictment was sufficient to justify the judgment ; and it was not necessary to describe the particular kind of liquor sold. (80 N. C. 439 ; 47 Vt. 297 ; 56 Ind. 153 ; 14 Gray 99 ; 63 N. Y. 277.)

WOODS, JUDGE :

L. B. Oliver was indicted in the circuit court of Kanawha county, for selling in that county, without a State license therefor, "spirituous liquors, wine, porter, ale, beer, and drinks of like nature" against the peace, &c. To this indictment the defendant pleaded not guilty, and neither party requiring a jury, by consent of parties the cause was tried by the court in lieu of a jury, and having heard the evidence and argument of counsel, the court found the defendant guilty, who thereupon and before judgment, moved the court to arrest the judgment and to set aside its finding, because the same was contrary to the law and the evidence, and award him a new trial, which motions the court overruled, to which rulings of the court the defendant excepted and filed his bill of exceptions, wherein all the facts proved at the trial are certified by the court, which then entered upon its finding, a judgment against the defendant for a fine of ten dollars and the costs of the prosecution.

To this judgment the defendant obtained a writ of error.

It appears from the defendant's bill of exceptions that the State to maintain the issue on its part proved the following facts : "That the defendant, Oliver, in the county of Kanawha, within a year before the finding of the indictment, sold crab-cider once to one party and received pay therefor, and said cider when drank in large quantities will intoxicate, and in sufficient quantities is intoxicating," and this was all the evidence in the cause.

The plaintiff assigns as error.

First.—That crab-cider is not embraced within the meaning of the statute prohibiting the sale of "spirituous liquors, wine, porter, ale, beer, or drinks of like nature;" and

Second.—If it is so embraced the facts proved were insufficient to convict him of the offence charged in the indictment.

The second ground of error is easily disposed of, for if crab-cider is a spirituous liquor, or wine, or a drink of like nature of either, or of porter, ale or beer—then it would seem clear that he was rightfully convicted, for there is no doubt that the court acting in lieu of a jury was fully warranted, in finding that he did sell crab-cider in Kanawha county to some person within one year before the finding of the indictment.

The only material question here presented for consideration, is whether by a proper construction of the statute in regard to the sale of spirituous liquors, &c., without license, the sale of crab cider is prohibited. But for the provisions of this statute, the sale of all these liquors would be lawful ; every-one would be at liberty to engage in the traffic in them that was inclined to do so, as in the traffic in every other article of commerce; but because the unrestricted sale of spirituous liquors, leads to great domestic and social evils, the legislature has, in its wisdom, from time to time, regulated, restricted and even prohibited, the trafic in spirituous and other liquors, by requiring special licenses, to conduct the business and imposing fines and penalties upon such persons as engage in this business without being specially authorized to do so. Unless restrained by constitutional inhibitions from doing so, the power of the legislature to

restrict, limit or even prohibit the traffic in spirituous liquors is unquestionable.   But as the trafic in spirituous liquors is not in itself unlawful, and is only made so, by positive enactments, restricting, limiting or prohibiting the same, we must look to the enactments themselves, and form our conclusions by a fair and just interpretation of their provisions, as we find them upon the statute book.

While there is no direct proof, wherein crab-cider, in any respect differs if at all, from common cider, yet it seems to be a fact admitted on the part of the State, that crab-cider, is cider made from the crab apple, wild or cultivated.

It is not going too far to assert, that among all the artificial or manufactured beverages in common use in this State, and we may add in the United States, the expressed juice of the apple or "cider," is the most common, the least expensive, and the most harmless; in its unfermented state, it is absolutely innoxious, and even when fermentation has commenced, unless arrested, it is very soon changed into vinegar.   This common beverage found in every locality, used more or less at certain seasons by all classes of our people, as well for many culinary purposes, as for a beverage, would naturally be present in the mind of every legislator who was endeavoring to classify and arrange such artificial drinks, the trafic in which he would deem hurtful to the public, and which ought to be restricted, limited or prohibited altogether. The same would be true of distilled spirits of every kind, whether known as alcohol, whisky, rum, brandy, gin, and all combinations or mixtures thereof, as the foundation, or active principle in all of them, would necessarily be the free alcohol entering into their composition; with these he would naturally associate, other liquors in common use, not the result of distillation, but such as by experience and observation were found to contain appreciable quantities of alcohol, and to produce intoxication, such as wine, and the different forms of drinks manufactured from malted grain of various kinds and commonly known as ale, porter and beer.

The first section of ch. 107 of the Acts of the Legislature 1877 declares that " No person without a State license therefor shall  *   *   * sell, offer or expose for sale spirituous liquors, wine, porter, beer, or any drink of a like nature.   And all

mixtures or preparations known as 'bitters,' or otherwise, which will produce intoxication, whether they be patented or not, shall be deemed spirituous liquors within the meaning of this section."

It will be observed that four classes of liquors are here designated :

First : " Spirituous liquors," including all *mixtures* known as " bitters " or otherwise, which will *produce intoxication.* Second : Wine.   Third : Ale, porter, beer, and fourth, any drink of a like nature.

The words " spirituous liquors," do not include wine, or other fermented liquor, for they imply that the beverage is composed in part or fully of alcohol extracted by distillation. Bishop on Statutory Crimes, sec. 1009.   Wines may or may not be spirituous—depending upon the absence or presence of alcohol in each evolved in the process of the fermentation of the juice of the grape or other fruit out of which it is made. Ale, porter and beer are neither the result of distillation, nor of the fermentation of the juice of any kind of fruit.   Webster defines beer—"a fermented liquor made from any kind of malted grain, with hops or other flavoring matters; also as a fermented extract of the roots and other parts of various plants, as spruce, ginger, sassafras."   He defines ale to be a liquor made from an infusion of malt by fermentation, differing from beer in having a smaller proportion of hops.   In like manner he defines " porter " to be " a malt liquor of a dark brown color, moderately bitter and possessing tonic and and intoxicating qualities."   From these definitions it will be perceived, that ale, porter and beer, are drinks of like nature, differing from, but similar to each other, but wholly different from spirituous liquors and wine.   How many other different drinks of like nature may be made from different malted grains or mixtures thereof, or from grains differently malted and flavored, or whether they would in a greater or less degree than ale, porter or beer, produce intoxication, we have no means of determining.   All spirituous or distilled liquors, and all wines, being by the terms of the act embraced within the prohibition, other drinks could not be of a like nature without at the same time being of the same nature, and if of the same nature, it would be a useless proceeding to describe

them as drinks of like nature. But when the words, "drinks of like nature " are applied to ale, porter and beer, they will include all similar preparations made by similar process of fermentation of similar nature, for then we may reasonably conclude they will be of like nature, and if of like nature, then by the terms of the act they are within the prohibition thereby imposed upon the sale thereof.

Cider is neither produced by distillation nor by fermentation, and although liable to fermentation, and when subjected to distillation, it is capable of producing a spirituous liquor, yet the ultimate product is no more like cider, than rum is like the juice of sugar-cane from which it is manufactured, neither is cider the result of any process of fermentation whatever, nor is it in any proper sense a mixture of any liquor other than water, which is common to all spirituous liquors wines, ale, porter, beer and all drinks of like nature. Not being a distilled liquor, neither is it a mixture known as "bitters" or otherwise, which will produce intoxication and therefore declared for the purpose of the act "spirituous liquor." Nothing can be so included unless both of these qualities unite in it; first it must be a mixture, second, a mixture which will produce intoxication. Being the unadulterated juice of the apple, it is no mixture, and under ordinary circumstances incapable of producing intoxication, it can not be classed as a spirituous liquor, neither can it with any degree of propriety be called "wine," and it is wholly unlike any fermented liquor made from a malted grain, or from the roots of plants or bark of trees as spruce, ginger, sassafras, birch and sarsaparilla. It must be observed that the act of the legislature lays no stress whatever upon the fact, that any of the liquors mentioned or included in it, the selling of which without licence is prohibited, are "intoxicating." It is therefore wholly immaterial whether all or any of them are intoxicating or not, and no inquiry as to this fact can be entered into; and it would be no defence if the accused were able to prove that any of the prohibited liquors was absolutely free from all intoxicating qualities. The unlicensed sale of any or all of them is unlawful, because the legislature has so declared, and not for any other reason. With the motives which induced the legislative mind to in-

clude in its prohibition the sale of spirituous liquors, wine, ale, porter, beer and any drink of like nature, and fail to include cider, we have nothing to do, nor are we in any degree responsible for what they have done, or what they may have failed to do, nor have we any authority or disposition to supplement their work by a strained judicial construction which will extend its prohibition to subjects not clearly em. braced by it, even if we are of opinion that it would have been wiser or better for them to have done so.   The very fact that in all the various modifications of this statute, no legislature has ever ventured to include cider among the prohibited drinks, is a strong argument against the pro. position so ably argued by the Attorney-General, that it is included and prohibited by the words "any drinks of like nature;" and when considered in connection with the early legislation of Virginia on this subject, is conclusive in our mind against it.   The earliest legislation on this subject to which we have had access is found in the Code of Virginia of 1792.   By sec. 4 of ch. 107 of that Code, it was enacted, "If any person wihout a license therefor, shall open a tavern or sell by retail wine, *beer, cider*, rum or brandy or spirituous liquors or a mixture thereof to be drunk in or at the place where it shall be sold, * * * * * * such offence shall be deemed a breach of good behavior, and he or she so offending shall forfeit and pay the sum of $30.00."   Here the selling of *beer* and *cider* is placed precisely upon the same ground as wine, rum, brandy or other spirituous liquors, and of course became unlawful, not becasue they were intoxicating, but because in terms expressly prohibited. This continued to be the law of Virginia until the adoption of the revised code of 1819 when it was enacted by sec. 8 of ch. 240 of that code : "If any person without such license shall open a tavern, or sell by retail, wine, rum, brandy or other ardent spirits, or a mixture thereof to be drank in or at the place where it may be sold. * * * * shall be deemed a breach of good behavior, and shall moreover forfeit and pay the sum of $30.00." Thus it appears that after an experience of twenty-seven years the general assembly of Virginia removed the prohibition upon the sale of beer and cider.

By sec. 18 of ch. 38 of the Code of 1849, the provision

contained in the Revised Code of 1819 was re-enacted without any change whatever.  By the act of the general assembly, passed in 1850, and carried unchanged into sec. 32, of ch. 38 of the new edition of the Code of Virginia published in 1860, it was enacted that "If any person sell by retail wine, ardent spirits or a mixture thereof, ale, porter or beer, or such like drinks to be drunk in, or at the store or place of sale, he shall unless he be licensed to keep any ordinary at such place forfeit $60.00."  This continued to be the law of Virginia and West Virginia until November 23, 1863, when the legislature passed the act contained in ch. 113 of the Acts of 1863, by the first section whereof it was declared "No person without a license therefor  *  *  *  * shall sell, offer or expose for sale at retail, spirituous liquors, wines, porter, ale or beer, or any drink of like nature," and prescribed what should be deemed selling at retail, and fixed the penalty for a violation of this provision at not less than $10.00, nor more than $100.00.  This provision unchanged in any material respect was carried into sec. 1 of ch. 32 of the Code of West Virginia of 1868, with the addition thereto now found in sec. 1 of ch. 107 of the Acts of 1877, in regard to the sale of "*mixtures,* known as bitters," &c.

In pursuance of sec. 46 of the Article VI. of the Constitution of 1872, authorizing the legislature "to pass laws regulating or prohibiting the sale of intoxicating liquors within the State," an act was passed April 4, 1873, entitled "An act to provide against the evils resulting from the sale of intoxicating liquors in the State of West Virginia."  Many of the provisions of this act were entirely novel to the former legislation of the State, and highly penal in their character, and if it had been permitted to remain upon the statute-book, and its provisions could have been enforced in the spirit of its enactment, the expectations of its friends, who hoped to arrest the evils resulting from the sale of intoxicating liquors, might have been in a great degree realized.

By sec. 1 of the last mentioned act, it was enacted, that "It shall be unlawful for any person or persons by agent or otherwise without first having obtained a license therefor, to sell in any quantity intoxicating liquors to be drunk on, upon, or about the building or premises where sold, or to sell

such intoxicating liquors to be drunk in any adjoining room, building or premises, or other place of public resort connected with said building; *Provided,* that no person shall be granted a license to sell or give away any intoxicating liquors, without first giving bond, with two good and sufficient securities, to be freeholders and residents of the county, in the penal sum of at least $3,000.00, conditioned that they will pay all damages to any person, or persons, which may be inflicted upon them either in person or property, or means of support, by reason of the person so obtaining a license, selling or giving away intoxicating liquors."

By the second section it was made unlawful for any person by agent or otherwise to sell intoxicating liquors behind screens, frosted windows, or any other device designed or intended to protect the seller from public observation.

And by the third section it was made unlawful for any person to to sell intoxicating liquors to minors unless upon the written order of their parents, guardians or family physicians, or to persons who are in the habit of getting intoxicated.

For a violation of either of these provisions, the offender, was required to pay a fine of not less than $20.00 nor more than $100.00, and be imprisoned in the county jail not less than ten nor more than thirty days.     This act, for the first time in the legislation of Virginia or West Virginia abolished the specification of the different prohibited liquors or drinks, and for the first time made it necessary to allege that any particular kind of liquor sold, was or was not intoxicating.     The statute made the sale of all intoxicating liquors, alike unlawful.     Under this act, the sale of such kinds of beer as were not intoxicating became lawful, which under the former acts were criminal, because they were in terms prohibited by it.     This act was repealed by ch. 107 of the Acts of 1877, under which the indictment in the case now under consideration was found.

The first section of this act as we have already seen re-adopts the language of the 1st section of the 32d chapter of the Code of West Virginia and forbids every person not having a State license therefor, "to sell, offer or expose for sale spirituous liquors, wine, porter, ale, beer, or any drink of like nature."

Thus it appears that while cider was declared one of the prohibited drinks in the Code of 1792, and so continued until the revision of the Code in 1819, when it was dropped from the statute, it has never since been restored. And when we call to mind the learning, care and diligence with which the Code of Virginia of 1849, was prepared; and the careful revision and re-enactment of this provision of the law by the several legislatures of Virginia and West Virginia, without restoring *cider* by name to the prohibited drinks, as it stood before the revision of 1819, no doubt remains in our mind that the sale of cider without a State license, is not a violation of sec. 1 of ch. 107 of the Acts of 1877, and we are therefore of opinion that the finding of the circuit court in the case under consideration was contrary to the law and the evidence.

The Attorney-General in his learned argument, has referred the Court to a large number of adjudicated cases in various States, wherein some branches of this subject have been considered, but after a careful review of them he frankly admits they do not afford much assistance here to the Court upon the point now under consideration, as they have been made upon statutory provisions there existing, which do not exist in this State. We have carefully reviewed all these cases, and we find that all of them have been decided with reference to the effect or operation of some particular statute, not in operation in this state. This is especially true of the cases of *State* v. *Starr*, 67 Maine 242; *State* v. *Page*, 66 *Ib.* 418.

*State* v. *McNamara*, 69 *Ib.* 133; *State* v. *Preston*, 48 Vt. 12; *Raw* v. *People*, 63 N. Y. 277. The *State* v. *Packer*, 80 N. C. 439, was an indictment for selling "intoxicating liquors," and the proof showed that the liquor sold was port wine, and this was properly held to be "intoxicating liquor."

*State* v. *Lowry*, 74 N. C. 121—was an indictment for selling spirituous liquors, and the proof showed the sale was of domestic blackberry wine, and the court held that whether such wine was spirituous liquor, was a question for the jury.

*Godfriedson* v. *People*, 88 Illinois 284, was an indictment for selling "intoxicating liquors" and the proof was that the liquor sold was a kind of malt liquor of an intoxicating quality

called "Pop." The jury found the defendant guilty upon each of twelve counts in the indictment, and the court held the conviction proper.

*State* v. *Biddle*, 54 N. H. 379, was an indictment for keeping for sale "intoxicating liquors"—and the proof showed that the liquors kept for sale were ale and cider. The trial court ruled that ale and cider after fermentation is completed are "intoxicating liquors," without proof of the amount of alcohol which they may contain; but the supreme court reversed this judgment of the trial court, and held, that whether they are intoxicating or not, is a question for the jury. *State of Vermont* v. *Reynolds*, 47 Vt. 297, was an indictment for owning, keeping, and possessing intoxicating liquors with intent to sell the same &c., and the court held that by the terms "intoxicating liquors," any kind of liquor, that would intoxicate was included. The *Board of Commissioners of Excise of Tompkins county* v. *Taylor*, 21, N. Y. 173, was a prosecution for selling without a license, "strong or spirituous liquors," and the court held that "strong beer" or any liquor is within the statute whether fermented or distilled, of which the human stomach can contain enough to produce intoxication.

*Commonwealth* v. *Bloss*, 116 Mass. 56, was an indictment for keeping a tenement used for the illegal sale of " intoxicating liquors," and the proof was that the liquor sold, was neither distilled spirits, ale, porter, strong beer, or lager beer, but was an entirely distinct and different article, and recognized as such in the trade, containing not more than half the stock as lager beer, and known as " schenk beer," which was fit for use in a short time after it was brewed ; the court held, that whether the liquor sold was intoxicating or not was a question for the jury, and the fact that although alcohol was discovered in it upon chemical analysis, though competent evidence, does not necessarily prove that the liquor sold was " spirituous " within the statute.

In *Commonwealth* v. *Dean*, 14 Gray 99, which was also an indictment for selling " intoxicating liquors," and the proof was, that the liquor sold, was unfermented cider ; it was held that the trial court correctly refused to instruct that the sale of unfermented cider was not prohibited, because by the

express words of the statute it was declared that " ale, cider and all wines " should be considered intoxicating within the meaning of the act. From this review of these cases, we find no reason to cause us to doubt the correctness of the conclusion which we have already announced. Nearly all of these cases are for selling " intoxicating liquors," while as we have already shown, under our statute it is wholly immaterial whether they are intoxicating or not, if not embraced within the list of spirituous liquors, wine, porter, ale, beer or drinks of like nature. While we are not called upon to decide, and we do not decide what drinks are embraced in the terms " any drinks of a like nature," yet we are of opinion, that cider or crab-cider is not one of the drinks intended to be prohibited as one of " the drinks of like nature " mentioned in the statute. The judgment of the circuit court of Kanawha is therefore reversed.

And this Court proceeding to render such judgment as the said circuit court ought to have rendered upon the facts certified do find the defendant not guilty, and judgment must be entered for the defendant.

SNYDER, JUDGE, dissenting :

I am unable to agree with either the reasoning or the conclusion of my brethren as contained in the preceding opinion. The controlling principle of that opinion is, that the statute was not intended to regulate or restrict the sale of liquors or drinks because they are intoxicating. It says, that the statute "lays no stress whatever upon the fact that any of the liquors mentioned or included in it * * are intoxicating ; " and declares that, "it is therefore wholly immaterial whether all or any of them are intoxicating or not." This it seems to me, with all deference, is a plain and obvious misconception of the manifest and declared object and spirit of the statute. Not only does the history of the legislation of Virginia and of this State on the subject, as set forth in the preceding opinion, clearly demonstrate a settled and distinctive intent and purpose to suppress the evils resulting from the unrestricted sale of intoxicants, but the same object

56

and purpose is with equal distinctness manitested both in the language and spirit of the very statute under consideration. This is declared in its title : "Regulations respecting licenses; injuries to persons arising from illegal sales of *intoxicating* liquors; remedy therefor."

The very section under which the indictment here was found uses the terms "intoxicating drinks" and mixtures "which will produce intoxication," and expressly prohibits their sale without a license. These terms are general and the proscribed drinks and mixtures are not otherwise described or designated than as intoxicating. If they are "intoxicating" or will "produce intoxication" they are prohibited, and if they are not they are not inhibited. Therefore, if cider or a mixture composed of cider and something else will produce intoxication, then, even though the thing mixed with the cider is entirely free from intoxicating ingredients, the sale of cider or such mixture requires a license under the statute. It necessarily follows from this conclusion, that if the decision of the majority of the Court is correct, a person may be indicted and convicted for selling cider at a public theatre or when mixed with molasses or ginger, yet if it is sold unmixed at any other time or place, although it may be proven to be intoxicating in the one case as much as in the other, he can not be indicted or convicted. And upon such construction these contradictions and inconsistancies exist not only in the same statute but in the same section and in part in the same sentence of the same section.

But this is not all. The same intent and object are apparent in all the other sections of the statutes which refer to liquor license, as will be found by an inspection of sections from eleven to eighteen inclusive. And section 44 declares that, "The provisions of this chapter shall in all cases be construed as remedial and not penal."

It seems to me, that no one can read this statute even carelessly without an absolute conviction, that it was intended by this statute not simply to produce revenue, but that the primary and principal object was to regulate and suppress as far as practicable the unrestricted and irresponsible sale of liquors or drinks, not because they are composed of specific ingredients or made in a certain manner or designated by particular

names, but because and only because they produce intoxication.

In my view it is altogether unimportant and unnecessary to indulge in any speculation or analysis as to the constituents or ingredients of which the liquors or drinks mentioned in the statute are composed, the manner in which they are made or manufactured or the difference or similarity between them and others not specifically mentioned in it.   The real test furnished by the true interpretation of the statute itself is, whether or not the liquor or drink in question is intoxicating. If it is, such drink is proscribed ; if it is not and is not one of the specific liquors or beverages named in the statute, then it is not proscribed.   Certain liquors or beverages were known to the legislature from common observation, if not from experience, to be capable, when drunk, of producing, and which do generally result in, partial or total intoxication. These are positively and by name proscribed.   Any inquiry as to the effects of these are placed by the statute beyond the control of the courts or juries; but as new intoxicants might be invented and as some liquors or drinks may in one form or state of fermentation produce intoxication while in other conditions they may not, it was impracticable for the legislature to foresee and provide for such drinks.   The statute, therefore, intending to proscribe all intoxicating liquors and drinks, without interfering with those that may not be so, employed this explicit and comprehensive language : "No person without a State license therefor shall   *   *   *   sell, offer or expose for sale, spirituous liquors, wine, porter, ale or beer, *or any drink of a like nature.*"

Now it is a matter of common observation and general knowledge that each and all of the beverages specifically named in the statute are intoxicating when drunk in less or greater quantities, and it is also equally well known that they contain no other quality common to each and all of them.   They are each and all intoxicating in their nature, but they are not all of the same nature in any other respect.   The conclusion, therefore, is inevitable that no other drink can be of "a like nature" with these in the language and intent of the statute, unless it be intoxicating, as that is the only quality common to all of them.

But, if the true interpretation of the statute were doubtful, the rules of construction would bring us to the same conclusion; for it is a cardinal rule that, "Where the words of a statute are not explicit, the intention is to be collected from the context, from the occasion and necessity of the law, from the mischief felt, and the object and the remedy in view, and the intention is to be taken or presumed according to reason and good discretion so as to prevent the mischief and advance the remedy." Dwarr. 194.

On the construction of this statute and the evil intended to be prevented this Court in *State* v. *Haymond*, Johnson, President, delivering the opinion, says: "It is certainly the evil of tippling, that is designed to be prevented by our act." 20 W. Va. 22. This is exactly what the statute itself demonstrates was the legislative intent. If, therefore, crab-cider is intoxicating, as is certified to be the fact in this case, then it is within the evil intended to be prevented, and the statute must be construed to embrace it in order to advance the remedy, unless the language and spirit of the statute plainly exclude it.

Upon the whole case and in view of the past history of the legislation on this subject, the language and spirit of the statute under consideration, the evil sought to be prevented and the common sentiment of the people generally, it seems to me but little short of absurd to contend that this statute "lays no stress whatever upon the fact that any of the liquors included in it are intoxicating." On the contrary, every consideration, which can properly be invoked in its construction, inevitably leads to the positive conclusion that the great and paramount object and design of the legislature in adopting it was to restrain, not by absolute and indiscriminate prohibition, but by a process of regulation and restriction, the sale of any and every kind of intoxicating liquors and beverages. *Board of Commissioners* v. *Taylor*, 21 N. Y. 173; *Raw.* v. *The People*, 63 *Id.* 277; *State* v. *Reynolds*, 47 Vt. 297; *Godfriedson* v. *The People*, 88 Ill. 284.

Crab-cider not being one of the drinks proscribed by name in the statute, the question whether or not it was intoxicating was one of fact to be determined by the jury, or the court acting in lieu of a jury, from the evidence in the case. *State*

v. *Biddle*, 54 N. H. 379; *Commonwealth* v. *Chappel*, 116 Mass.
7; *State* v. *Starr*, 67 Me. 242.

The court acting in lieu of a jury having found in this
case that the crab-cider sold by the defendant was intoxica-
ting, the judgment of the circuit court was right and should
be affirmed.

# SEPTEMBER TERM.

## CHARLESTOWN.

