## MONROE CIDER VINEGAR & FRUIT CO. v. RIORDAN, Late Collector of Internal Revenue.

(Circuit Court of Appeals, Second Circuit. February 20, 1922.)

No. 136.

1. **Evidence ☞7—Internal revenue ☞11—Nature of sweet cider a matter of common knowledge; "sweet cider" is within ordinary definition of "soft drinks"; "hard cider."**

"Sweet cider," which as a matter of common knowledge is a nonalcoholic beverage composed of the expressed juice of apples, as distinguished from "hard cider," which is fermented cider, is within the dictionary definition of "soft drink" as any drink that is nonalcoholic, so as to be taxable under the act imposing a tax on soft drinks unless a contrary intention appears.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Cider; Second Series, Soft Drinks.]

2. **Statutes ☞206—Consideration should be given to all words of a statute.**

Consideration and weight should be given to all the words and phrases of a statute in ascertaining the legislative intent.

3. **Internal revenue ☞11—Sweet cider is not taxable as soft drink under revenue act of 1918.**

Under Revenue Act of 1918, § 628 (Comp. St. Ann. Supp. 1919, § 6161½d), imposing a tax upon cereal beverages, upon unfermented grape juice, ginger ale, root beer, sarsaparilla, pop, artificial mineral waters, other carbonated beverages and other soft drinks, and upon all natural mineral waters, the designation of particular beverages would be meaningless if the term "soft drinks" were given its dictionary definition, and the act does not impose a tax on sweet cider, in view of the fact that all the drinks mentioned were artificial preparations except the grape juice, which was expressly specified, and that no mention was made of cider, though it was one of the commonest of nonintoxicating drinks, and especially in view of the report of the committee in presenting that act of Congress which indicated an intention to reduce rather than enlarge the field of taxation.

4. **Statutes ☞225—Acts in pari materia may be referred to.**

In cases of doubt or uncertainty, acts in pari materia passed either before or after the act in question, and whether repealed or still in force,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

may be referred to to ascertain the intent of the Legislature in the use of particular terms, but, when the act under consideration is a revenue act, it must be remembered the Legislature is constantly changing the list of taxable subjects, and caution must be exercised in appropriately assigning the weight to be given other legislation on that subject.

5. **Internal revenue ⟨key⟩11—Revenue act of 1921 indicates construction prior act did not tax cider as soft drink.**

The Revenue Act of 1921, which adopted a classification of taxable beverages which differed from previous classifications and included a new classification of still soft drinks which might appropriately include sweet cider, and then expressly excluded from such classification sweet cider, indicates an understanding by Congress that sweet cider was not taxed as a soft drink under the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6161½d).

6. **Internal revenue ⟨key⟩11—Regulations including cider in taxable soft drinks cannot change statute.**

Though regulations of an executive officer empowered to make them had the force of law if not inconsistent with statute, and the construction placed by an executive officer upon a statute is given weight, a regulation that the term "soft drinks" in the Revenue Act of 1918 (Comp. St. Ann. Supp. 1919, § 6161½d), includes sweet cider cannot write into the statute a provision which is not there, and is nothing more than an expression of opinion by an administrative officer.

7. **Internal revenue ⟨key⟩11—Ambiguity in taxing laws must be construed in favor of taxpayer.**

Where the construction of a revenue law is doubtful and seriously debatable, the tax will not be construed to apply to the doubtful article.

Manton, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Western District of New York.

Action at law by the Monroe Cider Vinegar & Fruit Company against Vincent H. Riordan, late Collector of Internal Revenue, to recover taxes paid under protest. Judgment for defendant on dismissal of the complaint (274 Fed. 736), and plaintiff brings error. Reversed.

In November, 1920, plaintiff, a domestic corporation engaged in the sale of sweet cider, sold and delivered to its customers 290 barrels of sweet cider for $3,862.17. Of this amount, $2,702.17 represented the sales price and value of the sweet cider, and $1,160 the sales price and value of the barrels. Plaintiff under protest paid to defendant collector $386.22 beverage taxes. A claim for refund was filed by plaintiff with the Commissioner of Internal Revenue, which was thereafter rejected upon the ground that sweet cider was taxable as a beverage, and that the aggregate amount paid for the sweet cider and the barrels was the basis for computing the tax. Plaintiff thereafter brought this action to recover the amount paid under protest, alleging that sweet cider was not taxable as a soft drink or otherwise, and that the sales price or value of the container was not taxable.

By stipulation the essential facts are undisputed, and thus only questions of law were argued at bar.

William W. Armstrong, of Rochester, N. Y., for plaintiff in error.

Stephen T. Lockwood, U. S. Atty., and Edward N. Mills, Asst. U. S. Atty., both of Buffalo, N. Y., for defendant in error.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MAYER, Circuit Judge (after stating the facts as above). This is concededly a test case. The principal question is whether sweet cider

is included in the classification "other soft drinks" set forth in section 628 of the Revenue Act of 1918, which became law February 24, 1919. 40 Stat. at L. 1057, 1116 (Comp. St. Ann. Supp. 1919, § 6161½d).

Section 628 reads as follows:

"Sec. 628. That there shall be levied, assessed, collected, and paid in lieu of the taxes imposed by sections 313 and 315 of the Revenue Act of 1917—

"(a) Upon all beverages derived wholly or in part from cereals or substitutes therefor, and containing less than one-half of one per centum of alcohol, sold by the manufacturer, producer, or importer, in bottles or other closed containers, a tax equivalent to 15 per centum of the price for which so sold; and upon all unfermented grape juice, ginger ale, root beer, sarsaparilla, pop, artificial mineral waters (carbonated or not carbonated), other carbonated waters or beverages, and other soft drinks, sold by the manufacturer, producer, or importer, in bottles or other closed containers, a tax equivalent to 10 per centum of the price for which so sold; and

"(b) Upon all natural mineral waters or table waters, sold by the producer, bottler, or importer thereof, in bottles or other closed containers, at over 10 cents per gallon, a tax of 2 cents per gallon."

A reading of this section shows at once that Congress classified and referred to different kinds of beverages which were to be subjected to the tax.

[1] If this case were to be decided by the dictionary definition of "soft drink," then unquestionably sweet cider would be included; for according, for instance, to the Century Dictionary, "soft drink" is "any drink that is nonalcoholic, as lemonades, ginger ale, tea," etc. "Cider," according to the dictionaries, was "formerly any liquor made of the juice of fruits; now the expressed juice of apples, either before or after fermentation." "Hard cider" is "fermented cider." "Sweet cider" is "cider before fermentation or cider in which fermentation has been prevented."

It is agreed by the parties, and it is a matter of common knowledge, that "sweet cider" is a nonalcoholic beverage, and therefore, within the dictionary definition supra, is a soft drink just as tea is a soft drink in the sense of a nonalcoholic beverage. If, therefore, Congress had intended that every nonalcoholic beverage should be taxed under section 628 supra, it would have been easy to frame a statute which would have read merely that there shall be levied, assessed, collected, and paid certain taxes upon "all soft drinks," or upon all drinks, whether fermented or unfermented, containing less than one-half of 1 per cent. of alcohol.

[2] It is a familiar rule of statutory construction that the legislative body is not presumed to use meaningless language, or, putting the rule another way, that in ascertaining the legislative intent due consideration and weight shall be given to the words and phrases of a statute.

[3] The inquiry immediately suggests itself: In mentioning such well-known drinks as ginger ale, root beer, and others, why did Congress omit "sweet cider," when it is probably the oldest nonalcoholic beverage of all the list set forth in section 628? The answer is to be found in the history of the legislation as illuminating the phraseological structure of the statute and in ascertaining the position of "cider" in common knowledge and in the English language.

"Cider" originally meant strong drink, and was known to the ancients, as a most cursory examination of the encyclopædias will disclose. In medieval English it was "cyder," and so continued until it attained its present spelling.

It has a familiar place in literature; for Bacon refers to "a kind of cider made of a fruit of that country," and in Audley Court Tennyson speaks of "a flask of cider from his father's vats." An English revenue or excise statute of 1763 was known as the Cider Act. Sweet and hard cider have been designations of the fermented and unfermented expressed juice of apples in common use in the English language long before any man now living was born.

Doubtless in every state of the Union and almost in every corner of every state sweet cider is produced for home consumption or commercial distribution, and, whether in the Genesee Valley or the Shenandoah Valley, there is hardly a farm, large or small, where typical of the farms throughout the country, there is not some production of sweet cider. Yet, with the knowledge of its widespread production, Congress deliberately omitted mention of this healthful beverage from the statute here under consideration.

An examination of the list of beverages specifically named in section 628 (a) will show that, with the exception of "unfermented grape juice," all are manufactured or artificially created, as distinguish from the natural juice of the apple expressed from it by mechanical means more or less simple. Artificial mineral waters and other carbonated waters are manifestly artificial. "Ginger ale" is defined in the Century Dictionary as "an effervescing drink similar to ginger beer. The name was probably adopted by manufacturers to differentiate their production from ordinary ginger beer." Ginger beer is defined as "an effervescing beverage made by fermenting ginger, cream of tartar and sugar with yeast and water." Root beer is a drink containing the extracted (not expressed) juices of various roots, as of dock, dandelion, sarsaparilla and sassafras. Sarsaparilla is derived from a plant found in various countries throughout the world, and the drink is not an expressed juice, but a preparation made by extraction or some similar process.

"Pop" is an effervescent beverage, so called from the sound made by the explosion of the cork, as ginger "pop," and is an old generic term for an effervescent drink.

Dictionaries in common use do not define "unfermented grape juice," but the International Encyclopædia states that it is made by expressing the juice, sweetening, heating to the boiling point, and sealing while still hot in cans or strong bottles. Albert E. Leach, a recognized authority on foods and beverages, in his work entitled Food Inspection and Analysis, defines it as "the juice of grapes filtered, sterilized and put in glass containers." It is probably correct, therefore, to assume that unfermented grape juice is the expressed juice of the grape, and, if so, it is the only instance specifically mentioned in the statute of a beverage which is an expressed juice of a fruit as distinguished from beverages otherwise and artificially made.

It is attempted to find support for the proposition for which the government here contends in the judicial definition of "soft drinks" in

some reported cases, but definitions must always be read in the light of subject-matter and of context and of the object sought to be accomplished.

In Eureka Vinegar Co. v. Gazette Printing Co. (C. C.) 35 Fed. 570, will be found a discussion of the definition of the word "cider." It was there held:

"In strictness, the juice of the apple before fermentation is simply apple juice, and it is only by fermentation that it becomes cider; and, when the word 'cider' alone is used in law or commerce, it is commonly understood to mean the fermented juice of apples."

We think this conclusion was erroneous, but whether it was or not is a matter of no consequence; for the same court said:

"The terms 'sweet cider' and 'hard cider' are in popular use to distinguish between the juice of the apple before and after fermentation."

The statute under consideration in that case referred to "alcohol, or any spirituous, ardent, vinous, malt or fermented liquors" and the court construed "Old Orchard hard cider" as a fermented liquor with alcoholic content, and thus as falling within the statute. This conclusion was sound and has nothing whatever to do with the question as to whether Congress under the act here concerned intended to tax sweet cider as a soft drink.

In State v. Oliver, 26 W. Va. 422, 53 Am. Rep. 79, the question was whether sale of crab cider was prohibited without a license under a statute which required a license for the sale of "spirituous liquors, wine, porter, ale, beer, and drinks of like nature." The court in a very interesting opinion held that crab cider was not comprehended within the classifications of the statute, and the case is an excellent illustration of the doctrine of noscitur a sociis, and its reasoning fully supports the contentions of plaintiff in error instead of those of defendant in error.

In Bradford v. Jones, 142 Ky. 820, 135 S. W. 290, the court was construing an ordinance which provided that "any person * * * who shall engage in the business of selling soft drinks shall pay a license tax. * * *" The court refers to "soft drinks that contain any per cent. of alcohol" as hurtful, and therefore within the regulation of the police power of the state, and then refers to "soft drinks, as lemonade, soda water, and mineral waters * * * as not detrimental to the public good and not needing police regulation." This decision and its observations may well have been sound for the purposes of the case there under consideration, but they are not in the remotest sense relevant to the case at bar.

In this case Congress had been confronted with the gravest problem of taxation in its history. In the report of the Committee on Finance (65th Congress, First Session, Report No. 103 to accompanying H. R. 4280). submitted by Senator. Simmons attention was called to the fact that the Senate Committee on Finance had devoted more than 10 weeks to a consideration of the bill, that the printed hearings covered over 650 pages, and that the hearings were attended by representatives of

nearly every interest affected by any of the provisions of the bill—i. e., the bill which ultimately became the War Revenue Act on October 3, 1917 (40 Stat. 300). In discussing "Title III, War Tax on Beverages," the report stated:

"Your committee approves the scheme of the House bill by which so-called soft drinks sold at soda fountains, bottling establishments, and other similar places are taxed through the medium of the tax imposed upon the carbonic acid gas used in the production of carbonated waters and other drinks, but it believes that the tax of 8 cents per pound imposed by the House bill upon carbonic acid gas is too high, and recommend that the House rate be reduced to 5 cents per pound, to be paid by the purchaser, and that the tax imposed on bottlers who make their own carbonic acid gas and are not subject to this tax be correspondingly changed from 2 cents to 1 cent per gallon on the beverages produced."

It will be noted that in this report the only reference to so-called soft drinks assumed that they were drinks of the kind in which carbonic acid gas was used, and this is in part reflected in the act of 1917, which, so far as here relevant, reads as follows:

"Sec. 313. That there shall be levied, assessed, collected, and paid—

"(a) Upon all prepared sirups or extracts *(intended for use in the manufacture or production of beverages, commonly known as soft drinks, by soda fountains, bottling establishments, and other similar places)* sold by the manufacturer, producer, or importer thereof, if so sold for not more than $1.30 per gallon, a tax of 5 cents per gallon; * * *

"(b) Upon all unfermented grape juice, soft drinks or artificial mineral waters (not carbonated), and fermented liquors containing less than one-half per centum of alcohol, sold by the manufacturer, producer, or importer thereof, in bottles or other closed containers, and upon all ginger ale, root beer, sarsaparilla, pop, and other carbonated waters or beverages, manufactured and sold by the manufacturer, producer, or importer of the carbonic acid gas used in carbonating the same, a tax of 1 cent per gallon; and

"(c) Upon all natural mineral waters or table waters, sold by the producer, bottler, or importer thereof, in bottles or other closed containers, at over 10 cents per gallon, a tax of 1 cent per gallon."

(Italics ours.) Act of Oct. 3, 1917, 40 Stat. at L. 310–312.

In the foregoing, which is the predecessor of the act here under consideration, subdivision (a) refers to the prepared sirups or extracts which are to be used in the manufacture or production of certain kinds of soft drinks by bottling establishments, while subdivision (b) refers to "soft drinks," inter alia, when manufactured or produced. It is plain that the term "soft drinks," had a trade significance and comprehended different kinds of soft drinks, as used in the 1917 Act.

It will be noted that the words "unfermented grape juice" are not followed by the words "and other soft drinks," but merely by "soft drinks," thus indicating that Congress considered soft drinks as used in this section to be something else than unfermented fruit juices. Congress was clearly using this expression "soft drinks" not to distinguish one class of beverages from another from the viewpoint of a prohibition or license act, but to distinguish soft drinks from the other items of the statute from a technical trade-name aspect.

When the Revenue Bill of 1918 was under consideration, Mr. Kitchin submitted the report of the House Committee on Ways and Means (65th Congress, Second Session, Report No. 767 to accompany H. R.

12663) and under the heading "Title VI, Tax on Beverages," that report read, in part, as follows:

"In the case of all other beverages, other than soft drinks, the rates under existing law are doubled.

"The present law levies the tax upon soft drinks; upon the basis of the gallon and the present tax only applies to soft drinks sold by the manufacturer, producer, or importer. As a considerable portion of the soft drinks sold are compounded at the soda fountain, and not reached under existing law, the taxes levied under existing law are not great revenue producers. In order to secure a greater revenue from soft drinks the bill provides that a tax of 30 per cent. be levied upon the manufacturer's, producer's, or importer's selling price of cereal beverages, and that a tax of 20 per cent. be levied upon the manufacturer's, producer's, or importer's selling price of all other soft drinks.

"In the case of soft drinks, compounded or mixed at the soda fountain, ice cream parlor, or other similar places of business, and ice cream, ice cream soda, sundaes, or other similar articles of food or drink when sold for consumption in or in proximity to such places of business, the bill levies a tax of 2 cents for each 10 cents or fraction thereof of the selling price to be collected from the consumer by the proprietor of the soda fountain or similar place of business and returned to the government. In the case of sales amounting to 7 cents or less the tax will only be 1 cent.

"The following table shows the beverage rates under existing law and under the proposed bill:

\* \* \* \* \* \* \* \* \* \*

|  | Existing Law. Rate per Gallon | Proposed Bill. Per Cent. |
|---|---|---|
| "Upon all prepared sirups or extracts used in the manufacture of soft drinks: |  |  |
| If sold for not more than $1.30 per gallon | $0.05 | —— |
| If sold for more than $1.30 and not more than $2 per gallon | .08 | —— |
| If sold for more than $2 and not more than $3 per gallon | .10 | —— |
| If sold for more than $3 and not more than $4 per gallon | .15 | —— |
| If sold for more than $4 per gallon | .20 | —— |
| Upon all unfermented grape juice, soft drinks, or artificial mineral waters (not carbonated) sold by manufacturer, producer, or importer in bottles or closed container | .01 | 20 |
| Upon beverages derived wholly or in part from cereals or substitutes therefor, containing less than one-half per cent. of alcohol | .01 | 30 |
| Upon all ginger ale, root beer, sarsaparilla, pop, and all other carbonated waters or beverages manufactured and sold by the manufacturer, producer, or importer of the carbonic acid gas used in carbonating the same | .01 | 20 |
| Upon all natural mineral waters or table waters sold by the producer, bottler, or importer thereof, in bottles or other closed containers, at over 10 cents per gallon | .01 | (1) |
| Upon all carbonic acid gas in drums or other containers (intended for use in the manufacture or production of carbonated water or other drinks), sold by the manufacturer, producer, or importer thereof per pound | .05 | —— |
| Soft drinks compounded or mixed at a soda fountain, ice cream parlor, or other similar place of business, ice cream, ice cream sodas, sundaes, or other similar articles of food or drink, when sold for consumption in or in proximity in such place of business | | (2) |

"(1) 2 cents per gallon.

"(2) 2 cents for each 10 cents or fraction thereof of the amount paid. When the charge is 7 cents or less the tax will be 1 cent."

The report of the Senate Committee on Finance (65th Congress, Third Session, Report No. 617 to accompanying H. R. 12863) called attention to the necessity of reducing taxation and stated:

"The cessation of war, therefore, brought with it not only the opportunity, but the necessity of reducing the large tax budget which the House had voted."

To this report was attached the report of the House Committee on Ways and Means above referred to.

Whatever, therefore, may have been the true construction of the act of 1917, it is apparent that Congress attempted to reduce rather than enlarge the field of taxation, and one of the most interesting features of the House Report is its classification of beverages for the purpose of pointing out the difference between the tax under the act of 1917 and the tax contemplated under the Revenue Bill of 1918. It will be noted that this classification follows the order of the act of 1917, and that "soft drinks" are not put in the classification under the head of "ginger ale, root beer," etc. In the act here concerned "unfermented grape juice" again appears as specifically mentioned and really standing alone, and all the drinks mentioned by classification, such as "carbonated waters" or specifically named, such as "ginger ale," then follow and at the end, and in association with and following these manufactured or artificial drinks are to be found the words "other soft drinks."

As is well known there are hundreds, perhaps thousands, of manufactured soft drinks with trade-names which are made up of various components, and it was naturally impossible for Congress to attempt to enumerate this large collection of soft drinks, and no doubt Congress intended under the act under consideration to tax all kinds of soft drinks in which, among other things, carbonated or artificial waters or extracts or sirups or other ingredients of one kind or another were used.

It is plain, however, that it never was the legislative intent to include sweet cider, for there can be no other explanation of specific mention of unfermented grape juice, on the one hand, or of ginger ale, sarsaparilla, etc., on the other.

Congress had undoubtedly investigated all aspects and data of this troublesome problem of taxation and arranged its schedules and picked out subject-matter for taxation, not in a haphazard way, but after thorough consideration, in the light of the nation's necessities and the usual conflicting interests which are involved in any tax measure. When, therefore, it failed to include sweet cider, that failure must be regarded, not as an accident, but as a deliberate omission to include a beverage of common and widespread use, fully as well, if not better, known than any other beverage mentioned in section 628, supra.

The necessity and desirability of examining closely the history of a statute has recently been illustrated in International Railway Company v. Davidson, 257 U. S. ——, 42 Sup. Ct. 179, 66 L. Ed. ——, decided January 30, 1922, where the Supreme Court had occasion to construe the words "vessel or other conveyance" found in a federal statute.

[4] It is a recognized rule of interpretation that—

"In cases of doubt or uncertainty, acts in pari materia, passed either before or after, and whether repealed or still in force may be referred to in order to discern the intent of the Legislature in the use of particular terms, or in the enactment of particular provisions. * * *" Vane v. Newcombe, 132 U. S. 220, 235, 10 Sup. Ct. 60, 33 L. Ed. 310; Stout v. Board of Commissioners, 107 Ind. 343, 348, 8 N. E. 222; Tiger v. Western Investment Co., 221 U. S. 286, 306, 31 Sup. Ct. 578, 55 L. Ed. 738.

Bailey v. Clark, 21 Wall. 284, 22 L. Ed. 651, is a striking illustration of a resort to a subsequent statute to resolve the doubt as to the construction of a provision of a prior revenue act. See, also, Johnson v. Southern Pacific Co., 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363; Wetmore v. Markoe, 196 U. S. 68, 25 Sup. Ct. 172, 49 L. Ed. 390, 2 Ann. Cas. 265; and (for a statement of the principle) U. S. v. A. J. Woodruff & Co., 175 Fed. 776, 99 C. C. A. 348.

[5] Of course, in considering the list of taxable subjects, it must be remembered that the Legislature is constantly making changes, and that caution must be exercised in appropriately assigning the weight to be given to such legislation in construing the previous statute. In the case at bar, however, the Revenue Act of 1921, which became law on November 23, 1921 (42 Stat. 227), is most instructive. In the report submitted by Senator Penrose from the Committee on Finance (67th Congress, First Session, Report No. 275 to accompany H. R. 8245) the following is stated under the "Title VI, Tax on Soft Drinks and Constituent Parts Thereof":

"Section 600 imposes manufacturers' sales taxes as follows: Two cents per gallon upon cereal beverages: 2 cents per gallon upon unfermented fruit juices intended for consumption as beverages; 2 cents per gallon upon 'still' or noncarbonated soft drinks; 10 cents per gallon upon natural or artificial mineral waters; 7½ cents per gallon upon finished or fountain sirups used in manufacturing or mixing soft drinks; and 5 cents per pound upon carbonic acid gas. * * *

"By section 628 of the Revenue Act of 1918 a tax of 15 per cent. is imposed upon the manufacturer's selling price on cereal beverages, and a like tax of 10 per cent. is imposed upon the manufacturer's selling price of all other soft drinks except natural mineral or table waters, which are taxable at the rate of 2 cents per gallon if sold at over 10 cents per gallon."

It will be noted that for the first time "unfermented fruit juices" are mentioned as a class in contrast with the single item of "unfermented grape juice" in the previous statutes, and it will also be noted that there is a new classification in the way of "still or noncarbonated soft drinks."

These recommendations took form in section 602 of the Revenue Act of 1921, which reads as follows:

"Sec. 602. That from and after January 1, 1922, there shall be levied, assessed, collected, and paid, in lieu of the taxes imposed by section 628 and 630 of the Revenue Act of 1918—

"(a) Upon all beverages derived wholly or in part from cereals or substitutes therefor, containing less than one-half of 1 per centum of alcohol by volume, sold by the manufacturer, producer, or importer, a tax of 2 cents per gallon.

"(b) Upon all unfermented fruit juices, in natural or slightly concentrated form, or such fruit juices to which sugar has been added (as distinguished from finished or fountain sirups), intended for consumption as beverages with the addition of water or water and sugar, and upon all imitations of any such

fruit juices, and upon all carbonated beverages, *commonly known as soft drinks* (except those described in subdivision [a]), manufactured, compounded, or mixed by the use of concentrate, essence or extract, instead of a finished or fountain sirup, sold by the manufacturer, producer or importer, a tax of 2 cents per gallon.

"(c) Upon all still drinks, containing less than one-half of 1 per centum of alcohol by volume, intended for consumption as beverages in the form in which sold (except natural or artificial mineral and table waters and imitations thereof, and *pure apple cider*), sold by the manufacturer, producer or importer, a tax of 2 cents per gallon.

"(d) Upon all natural or artificial mineral waters or table waters, whether carbonated or not, and all imitations thereof, sold by the producer, bottler, or importer thereof, in bottles or other closed containers, at over 12½ cents per gallon, a tax of 2 cents per gallon.

"(e) Upon all finished or fountain sirups of the kinds used in manufacturing, compounding, or mixing drinks *commonly known as soft drinks*, sold by the manufacturer, producer, or importer, a tax of 9 cents per gallon; except that in the case of any such sirups intended to be used in the manufacture of carbonated beverages sold in bottles or other closed containers the rate shall be 5 cents per gallon. Where any person conducting a soda fountain, ice cream parlor, or other similar place of business manufactures any sirups of the kinds described in this subdivision, there shall be levied, assessed, collected, and paid on each gallon manufactured and *used in the preparation of soft drinks* a tax of 9 cents per gallon. *  *  *"

(Italics ours.)

The foregoing contains an orderly and, in a sense, scientific classification of soft drinks. The statute seems to indicate that for commercial purposes to unfermented fruit juices there is added sugar or water or sugar and water, and consequently pure apple cider is not a soft drink under subdivision (b) of the statute, supra; nor is it a soft drink under (e), supra, which subdivision defines another class of soft drinks. Pure apple cider would come under the classification of still drinks (not soft drinks) containing less than one-half of 1 per cent. of alcohol. The exceptions under subdivision (c) are natural or artificial mineral and table waters and imitations thereof, which are dealt with under subdivision (d); and then standing out in sharp contrast to all other drinks and singled out from the hundreds or thousands of drinks of one kind or another is pure apple cider.

Certainly by the test of subsequent legislation there could be no more convincing proof that it never was the intent of Congress to tax sweet cider, and it is plain that Congress only thought that it was necessary specifically to except pure apple cider, when for the first time there appeared a classification—i. e., still drinks—under which it would naturally be included.

[6] It is urged, however, that article 13 of Regulation 52 of the Commissioner of Internal Revenue must be regarded as a practical construction of the statute. Article 13 provides:

"*Soft Drinks.* *  *  * the term 'other soft drinks' includes, among other drinks, apple juice *  *  * and other fruit juices sold as beverages by the manufacturer in bottles or other closed containers."

The rules as to the effect of an administrative regulation need not be elaborately stated. The most familiar are those which hold that, where an executive officer or department is empowered to make regulations, such regulations, if not inconsistent with the statute, have the force of

law, and those which require, by virtue of the doctrine of practical construction, that great heed shall be given to the construction which an executive officer or department places upon a statute, particularly where such construction had been followed for a considerable period of time; but an executive officer or department cannot write into a statute something which is not there, and a regulation such as quoted supra amounts to nothing more than an expression of opinion by an administrative officer, and not by a court. This article 13 must therefore be laid aside without further consideration.

[7] Finally, the most that can be said in favor of contention of defendant in error is that the question here presented is doubtful and seriously debatable. In such circumstances it must be remembered that the imposition of a tax is one of the highest and gravest powers of sovereignty.

In calling attention to the fact that the Supreme Court had repeatedly held that the custom revenue laws should be liberally interpreted in favor of the importer, Mr. Justice Brown, in Eidman v. Martinez, 184 U. S. 578, 583, 22 Sup. Ct. 515, 517 (46 L. Ed. 697), stated the general principle as follows:

"It is an old and familiar rule of the English courts, applicable to all forms of taxation, and particularly special taxes, that the sovereign is bound to express its intention to tax in clear and unambiguous language. * * *"

It is suggested arguendo that there was no economic reason for omitting cider from the statute here discussed. The reason or occasion for a tax is a matter for legislative, and not for judicial, consideration; but the best answer to this suggestion is found in the Revenue Act of 1921 which disclosed that Congress, for reasons it thought wise, expressly excluded pure apple cider from the list of taxable subject-matter.

We are fully satisfied that sweet cider is not subject to the tax, but, in any event, it is plain that in this instance Congress has not expressed its intention to tax sweet cider in that clear and unambiguous language which must be present before it should be held that a particular article of commerce is subject to a tax statute which does not name it specifically and comprehends it only if a meaning be given to the term "other soft drinks" which neither the history nor the structure of the statute justifies.

Judgment reversed.

MANTON, Circuit Judge (dissenting). An answer was filed to the complaint in this action which seeks to recover the return of taxes paid under the Revenue Act of 1918 under protest. Thereafter the denial of the material allegations of the complaint set forth in that answer was withdrawn by stipulation, and a motion made by the internal revenue collector for judgment on the pleadings. It resulted in the dismissal of the complaint on the merits, and judgment was thereafter entered against the plaintiff in error. This writ is sued out seeking to review the judgment so entered.

The plaintiff in error is engaged in the manufacture and sale of sweet cider containing less than one-half of one per cent. of alcohol, and for

a sale which was made the collector of internal revenue for the Twenty-Eighth district of the state of New York, by virtue of authority claimed to be vested in him, assessed a tax under the Revenue Act of 1918 (40 Stat. 1057, 1116). The tax, amounting to $386.22, was paid by the plaintiff in error under protest. Thereafter it filed a claim for the refund of this tax. This claim was disallowed, and it has resulted in this action. The theory of the plaintiff in error's right of recovery is based upon the ground that sweet cider is not taxable as a beverage within the provisions of the Revenue Act of 1918; further, that if cider is taxable, the Commissioner of Internal Revenue had no authority for and could not collect a tax which included the price of the container in which the cider was sold.

The act in question (40 Stat. 1057, 1116) provides for a tax on beverages derived from cereals or substitutes thereof and containing less than one-half of 1 per cent. of alcohol sold by the manufacturer, producer, or importer, in bottles or other closed containers, and a tax on all unfermented grape juice, ginger ale, root beer, sarsaparilla, pop, artificial mineral waters (carbonated or not carbonated), other carbonated waters or beverages, and other soft drinks, sold by the manufacturer, producer, or importer, in bottles or other closed containers. This is a tax equivalent to 10 per cent. of the price for which they are sold. The act provides that the tax is levied, assessed, and collected in lieu of the tax imposed by section 313 of the Revenue Act of 1917 (40 Stat. 300, 312). This act also provided a tax on soft drinks. It is provided by the Revenue Act of 1918 (section 1309, 40 Stat. 1057, 1143 [Comp. St. Ann. Supp. 1919, §§ 6371½i, 6371½j]) that the Commissioner of Internal Revenue with the approval of the Secretary, is authorized to make all needful rules and regulations for the enforcement of its provisions, and it is provided by section 1310a (section 6371½k) that, in the case of overpayment or overcollection of any tax proposed by section 628 (section 6161½d), the person making such overpayment or overcollection may take credit therefor against taxes due upon any monthly return, and shall make refund of any excessive amount collected by him upon proper application by the person entitled thereto. Pursuant to this authority, the collector of internal revenue formulated articles 11 and 13 of Regulation 52, which was approved on May 3, 1919, relating to this tax on soft drinks sold in bottles or other closed containers. In substance, it provides that the amount paid for the beverage in the closed container is a basis for computing the tax, though the container is billed separately. If the beverage is sold under an agreement by which the manufacturer is to refund the purchaser a specified amount upon the return of the container, the tax nevertheless attached to the whole price, including the amount agreed to be refunded upon the return of the container. And in such case the manufacturer may take credit in any monthly return for that portion of the tax paid which the amount actually refunded to the purchaser for the return of the container bears to the total sales prices as above computed. Credit is allowed only if at the time of making return and paying tax on the original sale a statement has been attached to the return showing the containers subject to refund, and at the time of the application for

the credit separate affidavit is made of the refunds actually identifying them with the sales referred to. By article 13 of the Internal Revenue Department, rule that fermented liquors other than cereal beverages are taxable at the rate of 10 per cent., the term "other soft drinks" includes among other things, fruit juices sold as beverages by the manufacturer in bottles or other closed containers. The question presented is whether "sweet cider," as that term is commonly understood, is a soft drink under the provision of section 628a of the Revenue Act of 1918. In common phrase, cider is referred to (a) as sweet cider and (b) as hard cider. It is defined as "formerly any liquor made of the juice of fruits and now as the expressed juice of apples, either before or after fermentation." Century Dictionary. Sweet cider is cider before fermentation, and hard cider is that which has lost its sweetness from fermentation. Before the change of sweet cider to hard, the liquid is nothing but apple juice, and the fermentation is the yeast or leavening of the juice of the apple. It is this which changes the cider from sweet to hard.

The courts are obligated to take notice of the ordinary acceptation of the words in the English language and also such matters of science as are well known to all men of common understanding and intelligence. Brown v. Piper, 91 U. S. 37, 23 L. Ed. 200; Terhune v. Phillips, 99 U. S. 592, 25 L. Ed. 293; King v. Gallum, 109 U. S. 99, 3 Sup. Ct. 85, 27 L. Ed. 870.

The meaning of the word "cider," its method of production and its general constituents are matters of common knowledge and upon which all books of accepted authority agree. No court would be justified in affecting ignorance of these facts or in closing its eye to' them in a case requiring their application. Eureka Vinegar Co. v. Gazette Printing Co. (C. C.) 35 Fed. 570. As that term is commonly understood, cider is the expressed juice of apples, either fermented or unfermented. The terms "sweet cider" and "hard cider" are used to distinguish in the popular understanding between the juices of the fruit before and after fermentation. It is a matter of common knowledge that sweet cider is not intoxicating. There may be a trace of alcohol, but it is not more than one-half of 1 per cent. In State v. Oliver, 26 W. Va. 422, 53 Am. Rep. 79, the court held that cider or crab cider was not a spirituous liquor, and that—

This "common beverage found in every locality, used more or less at certain seasons by all classes of our people, as well as for many culinary purposes, as for a beverage, would naturally be present in the minds of every legislator who was endeavoring to classify and arrange artificial drinks technically correct but not in popular understanding. The term should be construed according to universal use and understanding."

Unadulterated juice of apples pressed by the addition of one-tenth of 1 per cent. of benzoate of soda, and called preserved sweet cider, is not within the National Prohibition Act of October, 1919 (41 Stat. 305). Hildick Apple Juice Co., Inc., v. Williams (D. C.) 269 Fed. 184. As the term "soft drink" is univerally used and understood, cider is within that class of beverage. "Soft drinks" has been commonly understood to mean nonintoxicating beverages.

"While including lemonade, soda water, mineral waters, and other innocent and harmless beverages that are and have been for years sold all over the country, they are generally used in reference to 'malt mead,' 'near beer,' and other alcoholic decoctions, invented to take the place of intoxicating drinks." Bradford v. Jones, 142 Ky. 820, 135 S. W. 290.

By the use of the word "other," Congress denotes grape juice as a fruit drink and taxes other drinks considered to be of a similar nature or "soft." To give meaning to the term "soft drinks" in the statute, it is essential to charge Congress with an intent to mean and to include other fruit juices. I do not think that Congress intended to discriminate in favor of sweet cider. No economic reason is advanced why fruit juices such as grape juice should be taxed and the juice of apples should not. Pursuant to his authority, the Commissioner of Internal Revenue has ruled that by article 13 of Regulation 52 sweet cider is taxable. Md. Casualty Co. v. U. S., 251 U. S. 342, 40 Sup. Ct. 155, 64 L. Ed. 297. I think this regulation was not in conflict with the statutory provision, and that by virtue of the authority thus intrusted to the Commissioner sweet cider in this instance is properly taxable.

Nor was it error to hold below that the tax was rightly imposed upon the sale price of both the contents and the container. By a departmental regulation, a rule has been established which forms a basis for the tax on the sale price of both the beverage and container. A departmental regulation addressed to and reasonably adapted to the enforcement of the act of Congress, the administration of which is confided to such department, has the force and effect of law, if it be not in conflict with expressed statutory provision. U. S. v. Grimaud, 220 U. S. 506, 31 Sup. Ct. 480, 55 L. Ed. 563; U. S. v. Morehead, 243 U. S. 607, 37 Sup. Ct. 458, 61 L. Ed. 926. The acts of the Commissioner are presumed to be the acts of the Secretary of the Treasury. In re Huttman (D. C.) 70 Fed. 699. Section 628 provides that soft drinks sold by the manufacturer or producer "in bottles or other closed containers" imposes a tax equivalent to 10 per cent. of the price for which so sold. The manufacturer in the course of his business may agree to make a refund upon the return of the container, and, while the selling price of the beverage includes the price of the container, he is entitled, under the departmental regulation, to a rebate upon a proper showing. By the delivery of the beverage a sale is made, and indicates the intent on the part of the manufacturer to sell both. The price is fixed for both. This is reasonable because the plaintiff in error does not know that the container will be returned for the refund. Reasonable provision is made that, if it is returned, full credit may be obtained. Under these circumstances, the selling price of the beverage and container are an inseparable total. The tax attaches when the beverage is sold, when the vendor passes title to the purchaser. I think the regulation is a reasonable one and provides fairly for the refund. The phrase "sold by the manufacturer, producer or importer in bottles or other closed containers," indicates an intent by Congress that the beverage taxed shall be that sold in such closed containers, and that the price upon which the tax shall be imposed is the price charged by the manufacturer at the time he sells and on the total selling price.

Our attention is called to Revenue Act Nov. 23, 1921, § 602, which repeals the section of the law under consideration in the present case. In the 1921 act Congress specifically exempts "pure apple cider." Subdivision (c), § 602. It is argued from this that Congress did not intend to include cider in the definition of "other soft drinks" in the act of 1918. But a statutory provision the meaning of which is not clear should be construed with reference not only to the statute as a whole, but with reference to contemporaneous and subsequent enacted statutes in pari materia. Where a statute repeals or replaces an earlier law, any change of language is more consistent with the change of intent than with the purpose of defining or declaring the meaning of the language of the earlier repealed statute. U. S. v. A. J. Woodruff & Co., 175 Fed. 776, 99 C. C. A. 348.

The court below, holding that the complaint did not state facts sufficient to constitute a cause of action, was right, and the judgment rendered for the defendant should be affirmed.